UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. BONNIE STERLING, | : | 06 Civ. 1141 (PAC) |
| | : | |
| Plaintiff, | | OPINION & ORDER |
| | : | |
| - against - | | |
| | : | |
| | : | |
| HEALTH INSURANCE PLAN OF GREATER NEW YORK, INC. | : | |
| | : | |
| Defendant. | : | |

------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

Relator Bonnie Sterling ("Relator") sues on behalf of the United States under the False Claims Act, 31 U.S.C. § 3729, et seq., ("FCA"), alleging that her former employer, the Health Insurance Plan of Greater New York, Inc., ("HIP" or "Defendant") defrauded the United States Government and the City of New York while providing health benefits and health management services to both entities. Relator alleges that HIP fraudulently altered data in order to obtain accreditation needed to maintain a contract with the United States Government. Relator seeks judgment against HIP of a civil penalty between $5,500 and $11,000 for each violation of the FCA, treble damages, an award to Relator of the maximum amount allowed under 31 U.S.C. § 3730(d), and attorneys fees and costs.

Defendant moves to dismiss the complaint for failure to state a claim and failure to plead fraud with particularity, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). For the reasons that follow, Defendant's motion to dismiss the complaint is GRANTED.

# BACKGROUND[1]

## I. The Parties

Defendant HIP is a non-profit corporation providing health-care benefits to employees in private companies and government organizations in the greater New York region. Of relevance to this matter, HIP was and currently is a contractor to the federal government, providing health maintenance and health care to federal employees, recipients of Medicaid, and federal beneficiaries receiving benefits through various programs, including Child Health Insurance Plus ("CHIP"). The Amended Complaint states that HIP provides services to about 1.4 million people in New York, Connecticut, and Massachusetts.

Relator Bonnie Sterling worked as a Lead Programmer in HIP's Medical Quality Department from March 2003 until her termination on June 21, 2005. Her primary job duties included analyzing medical claims to determine how often doctors in the HIP network followed protocols relating to accreditation. Ms. Sterling also analyzed Medicaid pharmacy claims received from the New York State Department of Health for those same protocols.

## II. The Claims of Fraudulent Activity

The terms of HIP's contract with the federal government required that HIP comply with 5 C.F.R. § 890.201, which sets out minimum standards for the Federal Employees Health Benefits Program.[2] The Amended Complaint states that under § 890.201, HIP must maintain accurate statistical data about its treatment procedures and must use this data to obtain and maintain

---

[1] The facts in this section are taken from Plaintiff's First Amended Complaint ("Pl.'s First Am. Compl.") and Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Amended Complaint ("Pl.'s Mem. of Law"), except where otherwise stated. For purposes of brevity, the Court will not cite each reference to the facts.

[2] Relator's First Amended Complaint and Memorandum of Law refer to 5 C.F.R. § 890.201 with different citations, making it unclear exactly which regulation Relator refers to. (See Pl.'s First Am. Compl. ¶ 9 (citing to 5 C.F.R. § 89); Pl.'s Mem. of Law 5 (citing to 5 U.S.C. § 8901)). The Court will assume that § 890.201 is the relevant regulation.

2

certification from certain accrediting agencies.[3]  Additionally, HIP's standard form contract with the U.S. Office of Personnel Management ("OPM") also required HIP to maintain this data and to obtain accreditation as a condition to providing services to federal employees.  The Amended Complaint points to sections 1.7 and 1.9 of the contract as the relevant sections.  Section 1.7 is titled "Statistics and Special Studies."  It provides that:

> (a) The Carrier shall maintain or cause to be maintained statistical records of its operations under the contract and shall furnish OPM . . . the statistical reports reasonably necessary for OPM to carry out its functions . . . .

Section 1.9 of the contract is titled "Plan Performance—Community-Rated Contracts."  It provides that:

> (b) Clinical Care Measures.  The Carrier shall measure and/or collect data on the quality of the health care services it provides to its members as requested by the OPM.  Measurement/data collection efforts may include performance measurement systems . . . or similar measures developed by accredited organizations such as the National Committee for Quality Assurance . . . .
> . . .
> (d) Accreditation.  To demonstrate its commitment to providing quality, cost-effective healthcare, if it has 500 or more Federal enrollees, the carrier shall continue to pursue and maintain accreditation according to the steps and timeframes outlined in the carrier's current business plan.  The carrier shall submit accreditation changes and business plan updates to its OPM contract representative.

Relator claims that Defendant was required to comply with these conditions; that defendant falsified data to obtain accreditation; and that the United States Government relied on this fraudulently obtained accreditation to repeatedly issue contracts to HIP.  Relator alleges one specific instance of data falsification: on or about May 24, 2005, she performed a computer analysis to determine the percentage of children diagnosed with Pharyngitis who were tested for

---

[3]  Defendant challenges Relator's interpretation of § 890.201 as a "mischaracterization of the regulations," noting that while these regulations do require health care carriers to keep statistical records (§ 890.201(7)) and to furnish those records as requested by the Office of Personnel Management (§ 890.2.2), the regulations do not require certification from accrediting agencies. See Def.'s Mem. of Law in Support of Mot. to Dismiss 11 n.6.

3

strep throat, and the result of the analysis showed a percentage range of 2.35% to 2.95% tested. Relator alleges that this low percentage would have caused an unfavorable rating with the National Committee for Quality Assurance ("NCQA"), HIP's accrediting agency. Therefore, on or about May 26, 2005, Relator's supervisor, Maria Adam, altered the data to reflect percentages ranging from 56.76% to 78.04% tested. Adam changed the percentages by inflating the number of children tested from 374 to 8,419. As a result of this fraudulent alteration, NCQA allegedly provided HIP with a rating of "commendable" to "excellent." Finally, Relator alleges that had the Government been aware that HIP generated such fraudulent data it would not have issued contracts and paid premiums to HIP.

**III. Procedural History**

Relator filed her complaint under the FCA on January 26, 2006.[4] The FCA provides that the complaint and other documents remain under seal for an initial 60-day period while the Government decides whether to intervene in the case. 31 U.S.C. § 3730(b)(2). After receiving several extensions from this Court, the government declined to intervene, and the Court unsealed the Relator's complaint on July 5, 2007. Relator filed her First Amended Complaint on December 26, 2007, and Defendant filed its motion to dismiss on January 11, 2008.

## DISCUSSION

**I. Motion to Dismiss Standard and Rule 9(b) Pleading Requirements**

The Defendants have moved to dismiss the complaint. On a motion to dismiss, the Court accepts as true the factual allegations in the complaint and draws all inferences in the plaintiff's favor. See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006). To survive dismissal, a complaint must plead enough facts to be plausible on its face. Ruotolo v. City of New York,

---

[4] The original complaint included the State of Massachusetts as a plaintiff. The First Amended Complaint does not contain this party as a plaintiff.

514 F.3d 184, 188 (2d Cir. 2008) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)).  The Court may dismiss a claim where it "appears beyond doubt" that the plaintiff can prove no facts that would entitle him to relief. Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991) (citation omitted).

Rule 9(b) of the Federal Rules of Civil Procedure sets forth a heightened pleading requirement for complaints alleging fraud. See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Claims under the FCA must satisfy the Rule 9(b) standard. See Gold v. Morrison-Knudsen Co., 68 F.3d 1475, 1476-77 (2d Cir. 1995).

## II. The FCA

The FCA imposes civil liability and damages on any person who, in relevant part:

> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
>
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;
>
> (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid.

31 U.S.C. § 3729 (a)(1-3).  To establish liability under § 3729 (a)(1), a plaintiff must show that the defendant "(1) made a claim, (2) to the United States government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury." United States ex rel. Mikes v. Straus, 274 F.3d 687, 695 (2d Cir. 2001).  Presentment of the false claim to the United States Government is a requirement of subsection (a)(1). See Allison Engine Co. v. United States ex rel. Sanders, 128 S. Ct. 2123, 2129 (2008) ("[Section] 3729(a)(1) requires a plaintiff to prove that the defendant 'present[ed]' a false or fraudulent claim to the

5

Government . . . ."). Presentment of the false claim to the Government is not required under subsections (a)(2) or (3), however. Id. at 2129-30.

Liability under the FCA only attaches to claims with the potential of causing the Government to wrongfully disburse funds. Mikes, 274 F. 3d at 696. A false claim that has no relation to the Government's decision to issue payments does not create liability because "the Act is restitutionary and aimed at retrieving ill-begotten funds." Id. at 697. Thus, "it would be anomalous to find liability when the alleged noncompliance would not have influenced the government's decision to pay." Id.

Mr. Justice Alito, speaking for a unanimous Court in Allison Engine Co. v. United States ex rel. Sanders, 128 S. Ct. 2123 (2008), held that § 3729 (a)(2) and (3) required a plaintiff to show that the defendant made the false statement with the intent that the Government would rely on it as a condition of payment. Allison Engine, 128 S. Ct. at 2130. Speaking specifically to the situation where a defendant makes a false statement to a private entity and the plaintiff cannot show that the defendant intended that the Government rely on the statement for payment, the Court found that "the direct link between the false statement and the Government's decision to pay or approve a false claim is too attenuated to establish liability." Id. (also noting that "recognizing a cause of action under the FCA for fraud directed at private entities would threaten to transform the FCA into an all-purpose antifraud statute").

Finally, under the language of §3729 (a)(3), courts have found that general civil conspiracy principles apply to the statute, meaning that "there must be an agreement to defraud the government between two or more persons coupled with any act to get a false or fraudulent claim allowed or paid." United States ex rel. Taylor v. Gabelli, 345 F. Supp. 2d 313, 331 (S.D.N.Y. 2004) (internal quotations and citation omitted).

**III. Application of the Law**

As an initial matter, Ms. Sterling has clearly failed to state a claim under the conspiracy provisions of 31 U.S.C. § 3729 (a)(3). To adequately state a claim, Ms. Sterling must at least allege that two or more people or organizations were involved in the fraud. See United States *ex rel.* Finney v. NextWave Telecom, Inc., 337 B.R. 479, 489 (S.D.N.Y. 2006) (quoting Taylor, 345 F. Supp. 2d at 331). In her First Amended Complaint, however, Ms. Sterling makes reference to only one specific instance of fraud, and that example involves only one person, namely Ms. Adam, the employee of defendant HIP. (Pl.'s First Am. Compl. ¶ 13.) Taking her allegation as true, Ms. Sterling fails to meet the minimal standard to show a conspiracy under § 3729 (a)(3)— that more than one person was involved. Relator generally alleges in her complaint that "Defendants [sic] violated 31 U.S.C. § 3729(a) by conspiring to cause and by causing false claims to be made, used and then presented . . . ." (Id. ¶ 18.) This is the type of conclusory allegation that Rule 9(b) was intended to prevent. Even under Rule 12(b)(6), where the Court draws all inferences in the plaintiff's favor, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." United States *ex rel.* Anti-Discrimination Ctr. of Metro New York, Inc. v. Westchester County, New York, 495 F. Supp. 2d 375, 384 (S.D.N.Y. 2007) (quoting Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006)). Ms. Sterling's assertion that HIP was involved in a conspiracy is not supported by minimal allegations of multiple actors, thus she has failed to state a claim under 31 U.S.C. § 3729 (a)(3).

As for Relator's claim pursuant to § 3729 (a)(2), under Allison Engine, relator must show that HIP made the false statement to NCQA with the intent that the Government would rely on the statement as a condition of payment. See Allison Engine, 128 S. Ct. at 2130. Ms. Sterling

has failed to make such an allegation in her Amended Complaint. There is no statement that HIP's alleged fraudulent statement to NCQA was made with the intent that the Government rely on it as a condition of payment.[5] To the contrary, the Amended Complaint specifically states that the intent of HIP's alleged actions was to obtain accreditation. HIP "engaged in a pattern of fraudulent alteration" of its data "in order to fraudulently obtain accreditation from the NCQA." (Pl.'s First Am. Compl. ¶ 13.) HIP "fraudulently altered data . . . in order to obtain and maintain accreditation from [NCQA] . . . ." (Id. ¶ 2.) Ms. Sterling's Complaint explains HIP's actions as intended to deceive NCQA, not deceive the Government. Under Allison Engine this type of pleading is not enough to establish "the direct link between the false statement and the Government's decision to pay or approve a false claim." 128 S. Ct. at 1230.

The requirement of specific language in the pleading is more than just word chopping. Relator's claim does not show a substantial connection between HIP's alleged fraud and the Government's payment to HIP. Relator attempts to draw such a connection by stating that HIP had a contractual requirement to maintain accreditation, that the strep-throat testing statistics would have affected its accreditation, that HIP therefore falsified the results that it gave to NCQA to maintain good ratings, and then, finally, that the Government relied on this fraudulently obtained positive NCQA rating to award HIP continuing contracts. (See Pl.'s First Am. Compl. ¶ 9, 10, 13, 14.) This line of argument stretches the narrow boundaries that Allison Engine created for claims under § 3729 (a)(2). The Supreme Court specifically wanted to preclude relators' claims that were based on "attenuated" links between the false statement and

---

[5] Relator filed her Amended Complaint and Memorandum of Law in Opposition to the Motion to Dismiss before the Supreme Court decided Allison Engine. Following the decision, Relator filed a one-page letter to the Court pointing out that the Amended Complaint, paragraphs 9-10, alleges that HIP altered the strep-test data "intending to receive payment from the United States Government." (See Pl.'s Letter of June 20, 2008.) A review of paragraphs 9 and 10 of the Amended Complaint does not yield such a direct statement nor such a proposition. Those paragraphs simply lay out the regulatory scheme under 5 C.F.R. § 890.201.

8

the Government's decision to approve a claim. See Allison Engine, 128 S. Ct. at 2130. The Court noted that "[o]ur reading of § 3729 (a)(2) . . . gives effect to Congress' efforts to protect the Government from loss due to fraud but also ensures that 'a defendant is not answerable for anything beyond the natural, ordinary and reasonable consequences of his conduct.'" Id. (quoting Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 470 (2006)). The Court fashioned a delicate balance between the need to create liability for parties that defraud the Government, while also protecting Defendants from overbroad accusations of fraud. Judged against this standard, Relator's allegations against HIP, accepting them as true, fail to create a direct link between HIP's supposed fraud and the Government's decision to pay. Relator fails to state a claim for relief under § 3729 (a)(2).

The final basis for Relator's claim is § 3729 (a)(1). As discussed earlier, to establish liability under this subsection the relator must show that HIP "(1) made a claim, (2) to the United States government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury." Mikes, 274 F.3d at 695. Section 3729 (a)(1) mandates that the defendant must actually present the claim to the Government to be liable. Allison Engine, 128 S. Ct. at 2129; United States *ex rel.* Romano v. New York-Presbyterian Hospital, 00 Civ. 8792 (LLS), 2008 WL 2775703, at *2-3 (S.D.N.Y. July 16, 2008). The question then is whether the presentment of a false claim to NCQA serves as presentment of a claim to the Government under § 3729 (a)(1).

Relator urges that presenting data to NCQA in support of certification is akin to presentment of a claim for payment to the Government. In United States *ex rel.* Hunt v. Merck-Medco Managed Care, L.L.C., 336 F. Supp. 2d 430 (E.D. Pa. 2004), the defendant allegedly made false statements and claims to Blue Cross Blue Shield Association, a health plan that had

9

contracted with the United States to provide health services. Hunt, 336 F. Supp. 2d at 434. The Court found that a payment to Blue Cross was sufficient to satisfy the presentment requirement of § 3729 (a)(1) because "Blue Cross was an agent of the United States" and "the United States reimburses Blue Cross." Id. at 438. Relator also directs the Court to United States *ex rel.* Longhi v. Lithium Power Technologies, Inc., 530 F. Supp. 2d 888 (S.D. Tex 2008). While that case involves the FCA, the defendants there presented the alleged false claims directly to government organizations, namely arms of the Department of Defense. The case is therefore not relevant to the presentment issue here.

Neither case convinces the Court that presentment of medical data to NCQA is in any way equivalent or analogous to presentment to the Government. In Hunt, the Court found that Blue Cross Blue Shield was an agent of the Government because Blue Cross had a contract with the Government and received reimbursements from the Government. 336 F. Supp. 2d at 438 ("[Defendant] billed Blue Cross and hence the Government . . . ."). That is not the case here. The Amended Complaint does not describe NCQA as being funded by, in contract with, or related to the Government in any way. The only rational reading of Relator's Complaint is that NCQA is an independent accreditation organization, one of several recognized by the Government as developing standards in the health-care field.[6] Presentment of false data to such a group is not the same as presentment of a claim to the Government or a Government agent.

The Supreme Court recognized in Allison Engine in dicta that presentment of a false claim under § 3729 (a)(1) or (2) can create liability even when the presentment is made to "a contractor, grantee, or other recipient of federal funds and then forwarded to the Government." 128 S. Ct. at 2129 n.1. But the Court's language makes clear that the false claim, even if made

---

[6] The Amended Complaint notes that the standard OPM contract also mentions the Joint Commission on Accreditation of Healthcare Organizations ("JCAHO") and the American Accreditation Healthcare Commission/URAC. (See Pl.'s First Am. Compl. ¶ 12.)

10

to an agent of the Government, must at some point be forwarded to the Government for payment. Here, HIP's allegedly false statistics of strep-throat testing were sent to NCQA only. There is no allegation that either NCQA or HIP ever forwarded these statistics to the Government. The Relator fails to allege any facts that could show that she satisfies the presentment requirement in § 3729 (a)(1). Relator cannot make out a claim under § 3729 (a)(1) because she cannot establish presentment of the false claim to the Government.

## CONCLUSION

Relator's claim under 31 U.S.C. § 3729 fails because Relator failed to properly allege: (1) presentment of the false claim to the Government; (2) Defendant's intent that the Government rely on its false claim to make payments; and (3) a conspiracy of more than one party. The Defendant's motion to dismiss is therefore GRANTED. The Clerk of the Court is ORDERED to close out this case.

Dated: New York, New York
September 30, 2008

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge